

March 10, 2025

Hon. Rachel P. Kovner, U.S.D.J.
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn New York 11201

By Electronic Filing.

    Re: <u>Eaddy v. United States</u>, 24-cv-8109

Dear Judge Kovner:

 My firm, with co-counsel, represents Plaintiff in the case above. As provided by the Couert's Individual Rule No. IV.A, this letter is to respond to the government's pre-motion conference letter at ECF No. 12.

 As set out below, neither theory the government presents provides a basis to dismiss the claim, and the second theory points directly at necessary discovery.

**I. This claim falls squarely within existing New York negligence law, and the Discretionary Function exception does not apply.**

 The Complaint alleges stock-standard negligence claims: "Having assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard inmates, even from attacks by fellow inmates." *Sanchez v. State of New York*, 99 N.Y.2d 247, 252 (N.Y. 2002). Prisons have a duty to protect incarcerated people from "what the State reasonably should have known—for example, from its knowledge of risks to a class of inmates based on the institution's expertise or prior experience, or from its own policies and practices designed to address such risks. *Id.* at 254. Indeed, in *Wassmann v. County of Ulster*, the Third Department considered a substantially similar claim, finding that the failure to follow prison disciplinary rules regarding housing assignment was enough to create an issue of fact as to whether the state was liable for an assault by an incarcerated person. 144 A.D.3d 1470, 1472 (3d Dept 2016).[1]

 Here, Mr. Eaddy was slashed and brutalized — including a slash on his neck that was six inches long — nearly killing him. ECF No. 1 ¶¶ 18-38. And he likely only survived because a nurse refused a guard's direction to "leave him." *Id.* ¶¶ 27-28. After weeks in the SHU based on a false allegation, Lt. Santucci — a person without any authority to make housing decisions — told Mr. Eaddy he could stay in the SHU or be moved to unit 51 (rather than 52 where he had been). *Id.* ¶¶ 11-15. And unit 51 was "known at the time to be a unit where gang members were housed and the unit was extremely dangerous," particularly for people who are not members of the relevant gang or

---

[1] Third Department decisions are binding on lower courts within the Second Department. *See, e.g., Mtn. View Coach Lines, Inc. v Storms*, 102 AD2d 663, 664 (2d Dept 1984).

gangs. *Id.* ¶ 16. "When Mr. Eaddy [voiced] concern over the dangers in unit 51, Lt. Santucci told him he could either go to unit 51 or stay in SHU, where he was starting to lose his mind from the isolation. Faced with this Hobson's choice, Mr. Eaddy chose the former." *Id.*

The United States's claim this does not constitute classic negligence is based on an extremely narrow case where the plaintiff argued that the violation of a regulation alone was enough to establish the breach of a duty. But that argument fails.

To be sure, though the breach of a directive is evidence of negligence, it does not independently create a duty. *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016) (upholding dismissal because plaintiff "failed to establish that New York law recognizes a freestanding duty to abide by private regulations"). But Lt. Santucci *did* breach a directive, Plaintiff is not premising his negligence theory on that breach. Instead, Plaintiff alleges a violation of the well-known duty to protect him against foreseeable risks: Placing Plaintiff in a dorm that was not safe for him, with knowledge Plaintiff was likely to be assaulted. And, in fact, he was assaulted almost immediately upon arriving there. Lt. Santucci's violation of the directive is not pled as a free-standing negligence claim, it instead shows why the Discretionary Function Exception provides no protection.

The Discretionary Function Exception only applies when the decision being made is, unsurprisingly, discretionary. In general, housing placements are discretionary. But that does not mean that every correction officer in every federal prison can simply reassign someone to any dorm they want. The only person who has that discretion is the Unit Manager, under Federal Bureau of Prisons Program Statement 7331.05. The Unit Manager has access to multiple sources of information, and has several considerations they must take into account, when finding safe housing. But the Unit Manager did not reassign Plaintiff to a new dorm, Lt. Santucci did. And Lt. Santucci had no discretion to do so. Consequently, "[w]hen a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 544 (1988).

Put simply, the person who would be protected by the Discretionary Function Exception did not act here. Someone else did — and that person faced a mandatory directive telling him specifically *not* to do what he did. And what he did was, under well-settled state law, sufficient for liability. At the pleading stage, that is sufficient.

### II. Discovery is necessary to determine whether Plaintiff's claim was properly denied.

An administrative claim under the FTCA is not properly denied unless it is "denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675. Failure to send the denial by certified or registered mail is insufficient to time-bar a plaintiff from filing suit more than six months later. *See Parker v. United States*, 935 F.2d 176, 178 (9th Cir. 1991). Here, as in *Davis v. Goldstein*, the denial letter has "Via Certified and Return Receipt Mail" stamped on the letterhead above the typed portion of the denial. 563 F. App'x 800, 803 (2d Cir. 2014). There is no tracking number and there is no green return receipt, which presumably the prison that allegedly received the letter would have sent back to the regional office. This is particularly important here because the

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com

Bureau of Prisons did not send the letter to Plaintiff's permanent address on the claim form. Instead, it sent it to an address it removed him from before the letter could reasonably be expected to arrive.

First, the government does not address whether sending a denial to an address other than the one on the claim for suffices under 28 U.S.C. § 2675. The statute itself only says "sent by certified or registered mail," but that cannot mean a denial may simply be "sent by certified or registered mail" to any address the agency picks at random. *Id. Cf., e.g., Feinstein v Bergner*, 48 NY2d 234, 243 (1979) (Fuchsberg, J., dissenting) (discussing the "unfortunate and scandalous penchant for 'sewer service'" that emerged among some process servers, leading to amendments to CPLR 308). Rather, the purpose of the Form 95 asking claimants to designate the, "Name, address of claimant, and claimant's personal representative if any" is to ensure correspondence may be sent to a permanent address if possible. Here, however, the Bureau of Prisons failed to send the letter to the address designated by Plaintiff — which does not suffice as "sen[ding] by certified or registered mail" as provided by the statute.

Second, as a matter of equity, the Bureau of Prisons cannot send a letter to Plaintiff and then move him before it arrives or before the prison mail system actually gives it to him (the prison is not like a house where the inhabitants can go outside and check their mail; they must await sorting and security).[2] Taking all inferences in Plaintiff's favor, as must be done on a motion to dismiss, Mr. Eaddy was simply no longer at the prison where the Bureau of Prisons sent the letter by the time it was delivered, because the Bureau of Prisons itself moved him. The Bureau of Prisons took each step, knowing (as a matter of corporate knowledge) that it was (1) not sending the letter to the address Mr. Eaddy designated and (2) not sending it to an address where he would ever receive it. As in *Davis*, discovery on these issues is necessary to determine whether the denial was sent properly, or not.

Finally, in the circumstances here, equitable tolling should apply anyway. *See, e.g., Anson v United States*, 2021 US Dist LEXIS 126364, at *23 (WD Pa July 7, 2021) (equitable tolling where denial bounced back to the agency), *report and recommendation adopted* 2021 US Dist LEXIS 152169, at *3 [WD Pa Aug. 12, 2021). Plaintiff never received the denial, and at this stage, the most favorable inference is that either Defendants were still reviewing it when Plaintiff left the facility or it was simply caught up in the prison mail delivery system.  These "extraordinary circumstance[s] beyond [Plaintiff's] control" suggest "equitable tolling should be applied to any failure to meet the statutory deadline."  *Id.* at *25.

As always, we thank the Court for its time and consideration.

Respectfully submitted,

/s/
_____

J. Remy Green

---

[2] Prisons typically take some meaningful amount of time to process mail, in order to inspect it, search it for contraband, and so on.

Page 3 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Page 4 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com