UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

ANTONIO EADDY,

                            Plaintiff,         Civil Action No.
      v.                                             24-cv-8109

UNITED STATES OF AMERICA,                   (Kovner, J.)
                                                                (Scanlon, M.J.)
                            Defendant.

-----------------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

                                                           JOSEPH NOCELLA, JR.
                                                           United States Attorney
                                                           Eastern District of New York
                                                           Attorney for Plaintiff
                                                           271-A Cadman Plaza East
                                                           Brooklyn, New York 11201

ALEXANDRA MEGARIS
Assistant United States Attorney
*Of Counsel*

Date of Service: July 21, 2025

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ........................................................................................ 5
**BACKGROUND** ................................................................................................................ 5
**STANDARD OF REVIEW** ............................................................................................... 7
**ARGUMENT**..................................................................................................................... 8
    **I.    The Discretionary Function Exception Jurisdictionally Bars Plaintiff's Claim**……………………………………………………………………………...8

        **A.    The Discretionary Function Exception Bars Tort Claims Predicated on Inmate Housing Assignment Decisions** ................................................... 10

        **B.    Discretionary Function Exception Bars Tort Claims Predicated on Failure to Protect Inmates**........................................................................ 13

    **II.    Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted Because the Suit is Time-Barred** ................................................................................ 15

**CONCLUSION** ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                             **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 7
*Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
  968 F. 2d 196 (2d Cir. 1992) .................................................................................... 7
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 7, 8
*Berkovitz v. United States*,
  486 U.S. 531 (1988) .................................................................................................. 9
*Cangemi v. United States*,
  13 F.4th 115 (2d Cir. 2021) ................................................................................... 8, 9
*Chen v. United States*,
  Case No. 09-cv-2306, 2011 WL 2039433 (E.D.N.Y. May 24, 2011), *aff'd*, 494 F. App'x 108 (2d Cir. 2012) .................................................................................................... 15
*Coulthurst v. United States*,
  214 F.3d 106 (2d Cir. 2000) ..................................................................................... 9
*Davis v. Goldstein*,
  563 F. App'x 800 (2d Cir. 2014) ............................................................................. 15
*Fazi v. United States*,
  935 F.2d 535 (2d Cir. 1991) ................................................................................. 8, 9
*Gleave v. Graham*,
  954 F. Supp. 599, 605 (W.D.N.Y. 1997), *aff'd*, 152 F.3d 918 (2d Cir. 1998) .......... 11
*Iotova v. Quay*,
  Case No. 19-cv-1957, 2024 WL 923931 (E.D.N.Y. Mar. 4, 2024), *adopted,* 2024 WL 1513642 (Apr. 8, 2024) .................................................................................... 10, 11
*Kamen v. American Tel. & Tel. Co.*,
  791 F.2d 1006 (2d Cir. 1986) ................................................................................... 7
*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ..................................................................................... 7
*Molchatsky v. United States*,
  713 F.3d 159 (2d Cir. 2013) ..................................................................................... 9
*Moody v. Daggett*,
  429 U.S. 78 (1976) .................................................................................................. 13
*Nabe v. United States*,
  Case No. 10-cv-3232, 2014 WL 4678249 (E.D.N.Y. Sept. 19, 2014) ............... 11, 12
*Norton v. Larney*,
  266 U.S. 511 (1925) .................................................................................................. 7
*Ojo v. United States*,
  Case No. 16-cv-4112, 2019 WL 3852391 (E.D.N.Y. Aug. 15, 2019), *adopted,* 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019) ............................................................... 10, 13
*Pascarella v. United States*,
  582 F. Supp. 790 (D. Conn. 1984) .......................................................................... 15
*Rhodes v. Chapman*,
  452 U.S. 337 (1981) ................................................................................................ 13


*Roman-Cancel v. United States*,
   613 F.3d 37 (1st Cir. 2010) .................................................................................................. 15
*Russo v. United States*,
   Case No. 22-cv-1869, 2024 WL 726884 (2d Cir. Feb. 22, 2024) ........................................... 13
*Scrima v. Hasty*,
   Case No. 97-cv-8433, 1998 WL 661478 (S.D.N.Y. Sept. 24, 1998) ...................................... 13
*Searles v. United States*,
   Case No. 21-cv-6570, 2022 WL 2829912 (S.D.N.Y. July 20, 2022) ................................ 13, 14
*Taveras v. Hasty*,
   Case No. 02-cv-1307, 2005 WL 1594330 (E.D.N.Y. July 7, 2005) .................................. 13, 14
*Torres-Jurado v. United States*
   Case No. 20-cv-4575, 2004 WL 1092527 (E.D.N.Y. Mar. 12, 2024) ....................................... 8
*United States v. Gaubert*,
   499 U.S. 315 (1995) ........................................................................................ 9, 10, 12, 13, 14
*United States v. Mitchell*,
   445 U.S. 535 (1980) ................................................................................................................ 8
*Winters v. United States*,
   Case No. 10-cv-7571, 2013 WL 1627950 (S.D.N.Y. Apr. 16, 2013) ..................................... 14
*Young v. United States*,
   Case No. 12-cv-2342, 2014 WL 1153911 (E.D.N.Y. Mar. 20, 2014) ............................... 10, 14

**Statutes**
18 U.S.C. § 4042 .......................................................................................................................10, 13
28 U.S.C. §§ 1346 ........................................................................................................................ 5, 8
28 U.S.C. §§ 2401 ............................................................................................................................ 15
28 U.S.C. §§ 2675 ............................................................................................................................ 15
28 U.S.C. § 2680 ............................................................................................................................... 8

**Rules**
Fed. R. Civ. P. 12 ........................................................................................................................... 5, 7

**Regulations**
28 C.F.R. § 541.21 ............................................................................................................................ 6
28 C.F.R. § 541.21-541.30 ................................................................................................................ 6
28 C.F.R. §§ 540-553 ...................................................................................................................... 10
28 C.F.R. § 551.104 ........................................................................................................................ 11

4

**PRELIMINARY STATEMENT**

Defendant United States of America respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint in this matter pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons set forth below, this action should be dismissed because the Court lacks subject matter jurisdiction and because the action is time-barred.

Plaintiff Antonio Eaddy ("Plaintiff") is a former inmate who was housed at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, between November 2021 and October 2022 prior to his trial. Plaintiff brings his claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674, arising from an altercation between himself and other inmates on May 10, 2022. Plaintiff alleges that the United States was negligent when the Bureau of Prisons ("BOP") decided to assign Plaintiff to general population housing unit 52 where the attack on Plaintiff took place. *See* Dkt. No. 16, Amended Complaint ("Am. Compl.").

This Court should dismiss Plaintiff's lawsuit because the decision to assign Plaintiff to a specific housing unit is discretionary and subject to policy analysis and thus squarely falls within the ambit of the discretionary function exception to the FTCA. Moreover, Plaintiff filed his lawsuit more than 17 months after BOP denied his administrative claim and therefore it is untimely.

**BACKGROUND**

Plaintiff entered BOP custody at the MDC on November 17, 2021. *See* Declaration of Joseph Santucci, dated July 21, 2025, ("Santucci Decl.") ¶ 4. Between November 17, 2021 and May 10, 2022, the date of the attack that is the subject of this lawsuit, Plaintiff was assigned, and then re-assigned, to different housing units at the MDC several times. When he first entered custody, Plaintiff was assigned to the Special Housing Unit ("SHU"), per MDC protocol, to quarantine in the event he had been infected with Covid-19. *Id.*, ¶ 6. SHUs are housing units in

5

BOP institutions where inmates are securely separated from the general inmate population. *See* 28 C.F.R. § 541.21. After quarantine, Plaintiff was assigned to general population housing unit 53. *Id.*, ¶ 7. In March 2022, he was re-assigned to the SHU as a disciplinary measure because he was found to be in possession of a hazardous tool. *Id.*, ¶ 8. On April 5, 2022, Plaintiff was assigned to general population unit 52. *Id.*, ¶ 9. Several weeks later, following an incident on unit 52, Plaintiff and several other individuals who were housed in unit 52 were moved to the SHU while MDC staff investigated the incident. *Id.*, ¶ 10.[1] On May 10, 2022, Plaintiff was assigned to general housing population unit 51. *Id.*, ¶ 11; Am. Compl. ¶ 17. Prior to releasing Plaintiff from the SHU, MDC staff reviewed the database and determined there were no separation orders in effect for Plaintiff. *See* Santucci Decl., ¶ 12; Exhibit 3 to Santucci Decl. Lieutenant Santucci, who was the on-duty SHU Lieutenant that day, notified Plaintiff of the new housing assignment. Am. Compl. ¶ 17. Later that same day, Plaintiff alleges that his new cellmate, whom he did not know, attacked Plaintiff and that five to 10 other incarcerated individuals joined in the attack. Am. Compl. ¶ 23.

Plaintiff filed a Standard Form 95 Administrative Claim ("Form 95"), which BOP received on July 28, 2022, claiming damages for the injuries he sustained in the attack. Am. Compl. ¶ 5. In October 2022, while the claim was still pending, Plaintiff was transferred to FDC Philadelphia, a federal detention center in Philadelphia, Pennsylvania. *See* Santucci Decl., ¶ 13. In March 2022, Plaintiff was transferred to FCI Otisville, a medium-security federal correctional institution in

---

[1] Plaintiff alleges that he was falsely accused of being involved in the altercation and placed in the SHU as punishment. Am. Compl. ¶ 13. Inmates can be assigned to the SHU for several reasons, including for their own safety. *See* 28 C.F.R. §§ 541.21-541.30. Here, Plaintiff was placed in the SHU in administrative detention while MDC staff investigated the incident that occurred on Floor 52—not as a disciplinary measure. *See* Santucci Decl., ¶ 10.

6

Otisville, New York. *Id.*, ¶ 14. Plaintiff was released from FCI Otisville on supervised release on June 21, 2023. *Id.*, ¶ 15.[2]

On June 13, 2023, while Plaintiff was serving his sentence in FCI Otisville, the BOP denied Plaintiff's Form 95 and mailed a denial notice to Plaintiff at FCI Otisville. *See* Declaration of Alexandra Megaris ("Megaris Decl."), ¶¶ 2, 3. Plaintiff claims to not have received the denial notice. Am. Compl. ¶ 5.

After Plaintiff retained counsel, he filed a second, substantively identical Form 95. Am. Compl. ¶ 8. On May 30, 2024, BOP denied the claim as duplicative of the first, already-denied Form 95. Megaris Decl., ¶ 4. Plaintiff filed this lawsuit on November 21, 2024, more than 17 months after BOP denied the first Form 95. Dkt. No. 1.

## STANDARD OF REVIEW

An action is properly dismissed under Rule 12(b)(1) when "the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court must accept all material factual allegations in the complaint as true, "[h]owever, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." . *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F. 2d 196, 198 (2d Cir. 1992) (quoting *Norton v. Larney*, 266 U.S. 511, 515 (1925)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F. 3d at 113. The court may refer to evidence outside the pleadings. *See id.* at 113 (citing *Kamen v.*

---

[2] Plaintiff re-entered BOP custody in late 2024 and was released again on February 5, 2025. *See* Santucci Decl., ¶ 16.

*American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (stating that "evidentiary matter may be presented by affidavit or otherwise" under Rule 12(b)(1) motion)).

A complaint is properly dismissed under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility" where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[D]ismissal is proper where 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Torres-Jurado v. United States*, Case No. 20-cv-4575, 2004 WL 1092527, at *4 (E.D.N.Y. Mar. 12, 2024) (Gujarati, J.).

## ARGUMENT

### I.   The Discretionary Function Exception Jurisdictionally Bars Plaintiff's Claim

The United States, as a sovereign, must consent to be sued, and a court's jurisdiction to adjudicate a suit brought against the United States is strictly dependent on the terms of the United States' consent. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA is a limited waiver of sovereign immunity for certain damages claims based on "the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable under state law." 28 U.S.C. § 1346(b)(1).

The FTCA's limited waiver of sovereign immunity does not authorize claims against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government,

8

whether or not the discretion involved be abuse." 28 U.S.C. § 2680(a). Thus, a court lacks subject matter jurisdiction over a claim falling within this discretionary function exception. *See, e.g., Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021) (citing *Fazi v. United States*, 935 F.2d 535, 537 (2d Cir. 1991). Plaintiffs "bear the initial burden of showing that their claims against the United States fall within the FTCA's limited waiver of sovereign immunity" and also "bear the initial burden of showing that their claims are not barred by the discretionary function exception." *Cangemi v. United States*, 13 F.4th at 130; *see also Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013).

A court's determination of whether the exception shields the government from liability involves a two-step analysis. Courts look to the framework established in two seminal Supreme Court cases: *Berkovitz v. United States*, 486 U.S. 531 (1988) and *United States v. Gaubert*, 499 U.S. 315 (1995). According to the *Berkovitz-Gaubert* test, the discretionary function exception bars suit when two conditions are met: (1) the acts alleged to be negligent must be discretionary, "in that they involve an element of judgment or choice," and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy" or "susceptible to policy analysis." *Berkovitz*, 486 U.S. at 536; *Gaubert*, 499 U.S. at 323; *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000).

Congress's purpose in enacting the discretionary function exception was to "prevent judicial second-guessing" of decisions "grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz*, 486 U.S at 536-37 (internal quotations and citation omitted). The discretionary function exception does not apply "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because 'the employee has no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 322 (internal quotations

9

omitted). When there is discretion, however, the exception bars claims based on "decisions at the policy or planning level" and claims "based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." *Fazi*, 935 F.2d at 538; *Gaubert*, 499 U.S. at 321. Further, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. Therefore, when there is an established policy, like an agency guideline or regulation, that allows discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324.

### A. The Discretionary Function Exception Bars Tort Claims Predicated on Inmate Housing Assignment Decisions

BOP's housing and inmate management decisions are discretionary and subject to policy analysis. "Courts in this Circuit have routinely held that inmate housing and placement decisions . . . are a 'permissible exercise of policy judgment' that the [discretionary function exception] was designed to insulate from liability." *Iotova v. Quay*, Case No. 19-cv-1957, 2024 WL 923931, at *8 (E.D.N.Y. Mar. 4, 2024) (Henry, M.J.), *adopted by* 2024 WL 1513642 (Apr. 8, 2024) (Gujarati, J.); *Young v. United States*, Case No. 12-cv-2342, 2014 WL 1153911, at *11, n. 5 (E.D.N.Y. Mar. 20, 2014) (Ross, J.) ("Housing assignments are left to the discretion of prison administrators."). Here, the decision to assign Plaintiff to unit 51 after the incident on unit 52 involved the exercise of policy judgment that was not compelled by statute or regulation.

As to the first prong of the *Burkovtiz-Gaubert* test, BOP did not violate any specific mandatory directive when it assigned Plaintiff to general population unit 51 on May 10, 2022. BOP is statutorily vested with "charge of the management and regulation of all Federal penal and correctional institutions" and must "provide suitable quarters and provide for the safekeeping, care,

10

and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(1)-(2). However, the statute "does not direct the BOP how to fulfill [these] duties, nor does the statute mandate particular conduct by the BOP[.]" *Ojo v. United States*, Case No. 16-cv-4112, 2019 WL 3852391, at *7 (E.D.N.Y. Aug. 15, 2019) (Bloom, M.J.), *adopted by* 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019) (Brodie, Ch.J.). Similarly, the regulations promulgated at 28 C.F.R. §§ 540-553, which generally govern the administration and management of federal correctional institutions, and BOP's Program Statements, which are instructions to BOP staff for implementing these regulations, do *not* prescribe how housing assignments should be made. The regulations and Program Statement 7331.05[3], which specifically applies to pretrial inmates like Plaintiff, *only* instruct that pretrial inmates should be separated to the extent practicable from convicted inmates and that BOP staff review the Inmate Information System for information regarding possible separatees[4] and other management concerns prior to changing an inmate's housing unit. 28 C.F.R. § 551.104; Program Statement 7331.05(8). Otherwise, BOP staff have complete discretion with respect to housing decisions, including housing unit assignments and whether an inmate should be moved to or out of the SHU. Such decisions implicate the safety and security of all the inmates housed in the facility and are a result of the "informed discretion of an individual corrections officer," and should be insulated from the "judicial second-guessing." *Iotova*, 2024 WL 923931, at *8 (quoting *Nabe v. United States*, Case No. 10-cv-3232, 2014 WL 4678249, at *5 (E.D.N.Y. Sept. 19, 2014) (Garaufis, J.).

---

[3] BOP Program Statement 7331.05, Pretrial Inmates (available at https://www.bop.gov/policy/progstat/7331.05.pdf). The court may take judicial notice of BOP's Program Statements. *Gleave v. Graham*, 954 F. Supp. 599, 605 (W.D.N.Y. 1997), *aff'd*, 152 F.3d 918 (2d Cir. 1998); Fed. R. Evid. 201.

[4] A separatee is an inmate, who due to safety and security concerns, cannot be placed in housing units with other specific individuals. BOP documents and tracks separation-related issues in the Inmate Information System.

11

Prior to the May 10, 2022 incident, Plaintiff was primarily housed in general population housing unit 53 while in custody at the MDC. *See* Santucci Decl. ¶ 7; Exhibit A to Santucci Decl. On April 5, 2022, Plaintiff was assigned, for the first time, to general population housing unit 52. *Id.*, ¶ 9. Several weeks later, on April 25, 2022,[5] there was an altercation on unit 52, resulting in the separation of inmates that were potentially involved in the altercation while Special Investigative Services ("SIS") investigated. *Id.*, ¶ 10. Plaintiff was one of the inmates moved to the SHU for administrative detention during the pendency of the investigation.[6] On May 10, 2022, MDC staff responsible for determining whether an inmate can be released from the SHU decided that Plaintiff could return to the general population. On May 10, 2022, in accordance with BOP procedure, a SHU Release Form was prepared, and the SHU Lieutenant, Captain, SIS officer, Case Management Coordinator ("CMC"), and medical representative approved the release. *See* Exhibit C to Santucci Decl. A search of SENTRY confirmed that there were no separation orders in place for Plaintiff. *Id.*, pg. 5 (CIM Clearance and Separatee Data). Instead of returning Plaintiff to unit 52 where the April 25, 2022 incident occurred, MDC staff exercised their discretion and decided to assign Plaintiff to unit 51. Santucci Decl. ¶ 11. This decision was discretionary in nature and, therefore, the first prong of the *Berkowitz-Gaubert* test is satisfied.

As to the second prong, decisions relating to housing assignments are grounded in public policy considerations and/or are susceptible to policy analysis. Where, as here, the relevant statutes

---

[5] Plaintiff claims that he should have been returned to unit 52 because in unit 52 "Plaintiff was with his co-defendants, who could protect him." Am. Compl. ¶ 18. During his 11 months at the MDC, Plaintiff only spent 20 days in unit 52.

[6] Administrative detention status is an administrative status which removes an inmate from the general population when necessary to ensure the safety, security, and orderly operations of correctional facilities; such status is non-punitive. *See* BOP Program Statement 5270.12, Special Housing Units, § 541.22-23 (available at https://www.bop.gov/policy/progstat/5270_012_cn-1.pdf).

12

and regulations grant officials discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324. Decisions as to where to house inmates require BOP staff to weigh competing interests and policy considerations that can change from day-to-day, including effective use of available resources, staffing, facility limitations, general inmate safety, and BOP staff safety. *See, e.g., Nabe*, 2014 WL 4678249, *6 ("decisions regarding cell assignments implicate the safety and security not only of the plaintiff, but of all the inmates housed therein"). The decision to assign Plaintiff to unit 51 on May 10, 2022 was directly related to policy considerations of safety and security at the MDC. Thus, the second prong of the *Berkowitz-Gaubert* test is satisfied and Plaintiff's claim is barred under the discretionary function exception.

  **B.**   **Discretionary Function Exception Bars Tort Claims Predicated on Failure to Protect Inmates**

To the extent Plaintiff's claim is premised upon an alleged failure to protect the prison population, it also is barred by the discretionary function exception. "Courts have uniformly held that 'a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators.'" *Searles v. United States*, Case No. 21-cv-6570, 2022 WL 2829912, at *4 (S.D.N.Y. July 20, 2022) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981)). Under 18 U.S.C. § 4042(a), BOP is charged with "provid[ing] for the protection" of all persons charged with or convicted of offenses against the United States. 18 U.S.C. § 4042(a)(3). In analyzing this statute, this Court observed that "[a]lthough the statute imposes a duty of care on the BOP, it addresses only the general responsibilities of BOP employees and 'sets forth no particular conduct BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates.'" *Taveras v. Hasty*, Case No. 02-cv-1307, 2005 WL 1594330, at *3 (E.D.N.Y. July 7, 2005) (Trager, J.) (quoting *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)); *see also Russo v. United States*, Case

13

No. 22-1869-CV, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024). "The absence of specific guidelines of appropriate conduct by BOP officials in administering these duties, therefore, leaves judgment or choice to the BOP officials." *Taveras*, 2005 WL 1594330, at *3 (quoting *Scrima v. Hasty*, Case No. 97-cv-8433, 1998 WL 661478, at *3 (S.D.N.Y. Sept. 24, 1998)). This statute also "gives the BOP officials great discretion to administer their duties as they see fit." *Ojo*, 2019 WL 3852391, at *7.

Accordingly, the first prong of the *Berkovitz-Gaubert* test is "clearly satisfie[d]" here, as precedent and statutory language establish that "decisions regarding inmate security and safety are discretionary in nature." *Young*, 2014 WL 1153911, at *13. With respect to the second prong, where there is this type of discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. In addition, courts have repeatedly held that "prison decisions regarding security matters are grounded in public policy" and implicate policy considerations such as "economy, efficiency, and safety." *Chen v. United States*, Case No. 09-cv-2306, 2011 WL 2039433, at *7 (E.D.N.Y. May 24, 2011) (Ross, J.), *aff'd sub nom Chen v. United States*, 494 F. App'x 108 (2d Cir. 2012) (collecting cases); *see also Searles* 2022 WL 2829912, at *4 (same); *Winters v. United States*, Case No. 10-cv-7571, 2013 WL 1627950, at *6 (S.D.N.Y. Apr. 16, 2013). Thus, Plaintiff's claim that MDC failed to protect him is barred under the discretionary function exception.[7]

---

[7] Plaintiff alleges that "[f]or the entire duration of the attack, no corrections officer or other BOP staff member intervened." Am. Compl. ¶ 27. Plaintiff does not, however, allege that any corrections officer or MDC staff member actually saw or otherwise contemporaneously was aware of the attack. Even if Plaintiff pled such fact, any potential claim that MDC staff negligently failed to intervene in the May 10, 2022 incident also is barred by the discretionary function exception. "As courts in this Circuit have held, correction officers responding to prison fights act with discretion based upon their judgment and experience." *Young*, 2014 WL 1153911, at *14; *see also Taveras*, 2005 WL 1594330, at *4 ("[T]here exists no provision that mandates breaking up inmate fights immediately, possibly at the expense of safety of the prison personnel.").

14

### II. Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted Because the Suit is Time-Barred

Even if the discretionary function exception does not apply and this Court has subject matter jurisdiction over Plaintiff's claim, the claim still should be dismissed because it is time-barred. The FTCA bars suit unless a claimant has first presented his or her claim to the appropriate federal agency within two years after such claim accrues *and* the lawsuit is commenced "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim . . . ." 28 U.S.C. §§ 2675(a); 2401(b). The statute of limitations under the FTCA begins to run when the agency mails the denial letter, not when, or even if, the letter is received by claimant. *See Davis v. Goldstein*, 563 F. App'x 800, 803 (2d Cir. 2014). "Actual receipt of the notice . . . is not required by the statute." *Pascarella v. United States*, 582 F. Supp. 790, 792 (D. Conn. 1984).

It is undisputed that Plaintiff filed Form 95 with BOP on or about July 28, 2022. *See* Am. Compl. ¶ 4. It also is undisputed that on June 13, 2023, Plaintiff was housed in FCI Otisville, and that he left FCI Otisville on June 21, 2023. *Id*. at ¶ 6. BOP mailed the denial of Plaintiff's Form 95 on June 13, 2023 by certified mail to FCI Otisville. *See* Megaris Decl., ¶ 2. The United States Postal Service ("USPS") tracking statement for the mail piece shows that it was processed on June 16, 2023 at 11:00 p.m. in Philadelphia, Pennsylvania. *Id*., ¶ 3. The statute of limitations for Plaintiff to bring suit under the FTCA therefore began running at least by June 16, 2023, the date it was processed at the USPS mail facility. *See* 28 U.S.C. §§ 2675(a); 2401(b). Because Plaintiff was in BOP's custody, BOP knew, with 100% certainty, where Plaintiff was residing at the time it mailed the notice. As such, BOP acted reasonably and in good faith when it addressed the notice to FCI Otisville. Under the FTCA, whether the notice was received by FCI Otisville or Plaintiff is irrelevant.

Plaintiff cannot overcome the untimeliness of his claim by filing a new Form 95 alleging the same facts. *See Roman-Cancel v. United States*, 613 F. 3d 37, 42 (1st Cir. 2010) ("[O]ne bite at the apple is all that the FTCA's claim-filing scheme allows."). Plaintiff makes identical assertions in the two administrative claims and, in his complaint, Plaintiff concedes this fact. *See* Am. Compl. ¶ 4 ("Prior to retaining undersigned counsel, Plaintiff filed a Form 95 regarding the *instant* claim….") (emphasis added); *see also* Exhibits 3 and 4 to Megaris Decl. (containing both Form 95s submitted by Plaintiff).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant Defendant's motion to dismiss Plaintiff's action in its entirety, and grant Defendant any such other and further relief as this Court may deem just and proper.

Dated:    Brooklyn, New York

           July 21, 2025

                                              JOSEPH NOCELLA, JR.
                                              United States Attorney
                                              Eastern District of New York
                                              Attorney for Plaintiff
                                              271-A Cadman Plaza East
                                              Brooklyn, New York 11201

                                  By:    /s/ Alexandra Megaris
                                              Alexandra Megaris
                                              Assistant United States Attorney
                                              (718) 254-6105
                                              alexandra.megaris@usdoj.gov

TO:    Robert H. Rickner
        Rickner PLLC
        14 Wall Street, Suite 1603
        New York, New York 10005
        rob@ricknerpllc.com

        Elana L. Cohen
        J. Remy Green
        Jessica Massimi
        Cohen & Green P.L.L.C.
        1639 Centre Street, Suite 216
        Ridgewood, New York 11385
        elena@femmelaw.com
        remy@femmelaw.com
        jessica@femmelaw.com

## CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1(C)

I, Alexandra Megaris, certify that Defendant's Memorandum of Law in Support of its Motion to Dismiss, dated July 21, 2025 complies with the requirements of Local Rule 7.1(c), in that it contains 3,890 words.

Dated: July 21, 2025
      Brooklyn, New York

                                         */s/ Alexandra Megaris*
                                         Assistant U.S. Attorney