UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

ANTONIO EADDY,

                                    Plaintiff,          Civil Action No.
              v.                                            24-cv-8109

UNITED STATES OF AMERICA,                (Kovner, J.)
                                                              (Scanlon, M.J.)
                                  Defendant.

-------------------------------------------------------------------x

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

                                                       JOSEPH NOCELLA, JR.
                                                       United States Attorney
                                                       Eastern District of New York
                                                       Attorney for Plaintiff
                                                       271-A Cadman Plaza East
                                                       Brooklyn, New York 11201

ALEXANDRA MEGARIS
Assistant United States Attorney
*Of Counsel*

Date of Service: September 24, 2025

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................... 1

**ARGUMENT** ................................................................................................................................ 2

    **I.**      **The Decision to House Plaintiff in General Population Housing Unit 52 is Covered by the Discretionary Function Exception** ............................................................... 2

    **II.**    **The Lawsuit is Time-Barred** ................................................................................... 7

**CONCLUSION** ........................................................................................................................... 11

# PRELIMINARY STATEMENT

Defendant United States of America ("Defendant" or "United States") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Amended Complaint in this matter pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]

Plaintiff Antonio Eaddy ("Plaintiff") was an inmate at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, from November 2021 to October 2022. While at MDC, Plaintiff's housing unit assignment was changed multiple times, including a disciplinary-based assignment to the Special Housing Unit ("SHU") in March 2022. Under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674, Plaintiff asserts that he had an altercation with other inmates on May 10, 2022, and that the United States was negligent when the Bureau of Prisons ("BOP") decided to assign Plaintiff to general population housing unit 51 where the attack on Plaintiff took place. *See* Dkt. No. 16, Amended Complaint ("Am. Compl.").

As set forth more fully in the government's opening papers, this Court should dismiss the lawsuit because the decision to assign Plaintiff to housing unit 51 is discretionary and subject to policy analysis and thus squarely falls within the ambit of the discretionary function exception ("DFE") to the FTCA. Moreover, this case should be dismissed because it is untimely.

# ARGUMENT

## I. The DFE Covers the Decision to House Plaintiff in General Population Housing Unit 51

The FTCA's limited waiver of sovereign immunity does not authorize claims against the United States "based upon the exercise or performance or the failure to exercise or perform a

---

[1] Defendant's Memorandum in Support of The Defendant's Motion to Dismiss is referred to as "Govt. Mem. _." The declaration of Lieutenant Santucci dated July 21, 2025 is referred to as "Santucci Decl. ¶__." The declaration of Assistant United States Attorney Alexandra Megaris dated July 21, 2025 is referred to as "Megaris Decl. ¶__." Plaintiff's Opposition to the United States' Motion to Dismiss is referred to as "Plt. Oppo. __."

1

discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abuse," and a court lacks subject matter jurisdiction to hear them. *See* 28 U.S.C. § 2680(a); *see also* Govt. Mem. at Section I (citing cases).

Plaintiff agrees that this Court's determination of whether the DFE shields the government from liability involves the two-step analysis that the Supreme Court established in *Berkovitz v. United States*, 486 U.S. 531 (1988) and *United States v. Gaubert*, 499 U.S. 315 (1995). Plt. Oppo. 5. Under to the *Berkovitz-Gaubert* test, the DFE bars suit when two conditions are met: (1) the acts alleged to be negligent must be discretionary, "in that they involve an element of judgment or choice," and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy" or "susceptible to policy analysis." *Berkovitz*, 486 U.S. at 536; *Gaubert*, 499 U.S. at 323; *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000). Plaintiff argues that the United States cannot meet the first prong of the DFE test because Plaintiff's "Amended Complaint has more than enough detail to adequately allege a mandatory policy here." Plt. Oppo. 7.[2] Plaintiff's misreading and obfuscation of BOP directives, however, fail to meet his burden to show that the Court has subject matter jurisdiction.[3]

---

[2] Plaintiff did not contest the United States' ability to satisfy prong 2 of *Berkovitz-Gaubert*. *See generally* Plt. Oppo.
[3] Generally, plaintiffs "bear the initial burden of showing that their claims against the United States fall within the FTCA's limited waiver of sovereign immunity" and also "bear the initial burden of showing that their claims are not barred by the discretionary function exception." *Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021); *see also Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013). Quoting *Leibowitz v. United States*—a recent decision issued by Judge Dunst, No. 13-cv-1241, 2025 WL 2252386 (E.D.N.Y. July 30, 2025) (Dunst, J.)—Plaintiff argued that the United States has the burden of demonstrating the applicability of the DFE. Plt. Oppo. 6-7. Whether the plaintiff or government has the *ultimate* burden of proving applicability of the DFE, however, is not at issue here. As held by the Second Circuit and district courts in the circuit—including the cases cited in *Liebowitz*—a plaintiff bears the *initial* burden to plead facts that would support a finding that the conduct fell outside the scope of the exception. *See, e.g., Cangemi*, 13 F.4th at 130; *see also Molchatsky*, 713 F.3d at 162; *Anson v. United States,* 294 F. Supp. 3d 144, (W.D.N.Y. 2018) ("A plaintiff bears "the initial burden to state a claim that is not barred by the discretionary function exception") (internal quotations omitted); *Saint-Guillen v. United States*, 657 F. Supp. 376, 387 (E.D.N.Y. Sept. 28, 2009) (Irizarry, J.) ("For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. Plaintiffs have not satisfied this pleading requirement"). As explained above, Plaintiff here does not cite to a viable mandate that MDC staff allegedly violated.

The DFE only applies if there is no statute, regulation, or policy that specifically prescribes a course of action for a federal employee to follow. *Gaubert*, 499 U.S. at 322 (internal quotations omitted). When there is discretion, the exception bars claims "based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible courses is wisest." *Fazi*, 935 F.2d at 538; *Gaubert*, 499 U.S. at 321. Plaintiff fails to identify a single BOP directive in support of his argument that Unit Managers are the only BOP employees allowed to make housing assignments. Plt. Oppo. 5-6. Instead, he summarily opines that "[i]t would be absurd to think that the BOP would give every single correction officer unfettered discretion to move detainees to whatever housing assignment that officer wants." *Id*. Unfortunately for Plaintiff, his opinion has no bearing on this case.

As argued in the Govt. Mem., 28 C.F.R. §§ 540-553 and BOP's program statements do *not* prescribe how or by whom housing assignments should be made. Govt. Mem. 10-11. Rather, the applicable Program Statement 7331.05 ("Prgm. Stmt. 7331.05")[4] *only* instructs that pretrial inmates should be separated to the extent practicable from convicted inmates; and that BOP employees review the Inmate Information System for information regarding possible separatees[5] and other management concerns prior to changing an inmate's housing unit. *See* 28 C.F.R. § 551.104; Prgm. Stmt. 7331.05(8). Notably, the language in the regulation explicitly states that "BOP employees" – not, as Plaintiff imagines – "BOP Unit Managers" make these decisions. Under the plain text of the regulation, "BOP employees" have complete discretion to make housing decisions of pretrial inmates, including assignments and placement in or removal from the SHU

---

[4] Prgm. Stmt. 7331.05 specifically applies to pretrial inmates like Plaintiff. Prgm. Stmt. 7331.05, Pretrial Inmates (available at https://www.bop.gov/policy/progstat/7331_005_cn-1.pdf (last accessed Sept. 24, 2025). The court may take judicial notice of BOP's program statements. *Gleave v. Graham*, 954 F. Supp. 599, 605 (W.D.N.Y. 1997), *aff'd*, 152 F.3d 918 (2d Cir. 1998); Fed. R. Evid. 201.

[5] A separatee is an inmate, who due to safety and security concerns, cannot be placed in housing units with other specific individuals. BOP documents and tracks separation-related issues in the Inmate Information System.

3

because those decisions implicate the safety and security of *all* the inmates housed in the facility and staff. *Iotova*, 2024 WL 923931, at *8 (quoting *Nabe v. United States*, Case No. 10-cv-3232, 2014 WL 4678249, at *5 (E.D.N.Y. Sept. 19, 2014) (Garaufis, J.).

In this case, BOP complied with the two requirements set forth in Prgm. Stmt. 7331.05 when it assigned Plaintiff to housing unit 51 on May 10, 2022. First, Plaintiff never was placed with convicted inmates.[6] Second, MDC staff properly exercised their discretion and decided to assign Plaintiff to unit 51 instead of returning him to unit 52 after reviewing SENTRY for information regarding possible separatees and other management concerns. Prgm. Stmt. 7331.05(8), Exhibit C to Santucci Decl., page 5 (CIM Clearance and Separatee Data). Plaintiff ignores these facts in an attempt to paint Lieutenant Santucci as "rogue." Plt. Mem. 8.[7] Far from going rogue, the SHU Release Form confirms that any required procedures were followed. Exhibit C to Santucci Decl., page 5, Prgm. Stmt. 733105(8). The decision to place Plaintiff in unit 51 was discretionary in nature. Therefore, the first prong of the *Berkowitz-Gaubert* test is satisfied.

In support of his argument that BOP violated a specific mandate when it assigned Plaintiff to housing unit 51 on May 10, 2022, Plaintiff relies on *Section 7* of Prgm. Stmt. 7331.05, titled "Initial Assessment of Pretrial Inmates." Importantly, this section sets forth procedures BOP staff use only *during the first 48 hours* after an inmate is admitted into a BOP facility. Plt. Oppo 7 (citing to Prgm. Stmt. 7331.05(7)(b)). Plaintiff's conclusion that "the decision regarding a pretrial inmate's housing assignment is made solely by the Unit Manager" is erroneous for three reasons.

---

[6] Plaintiff does not allege that he was housed with convicted inmates. *See generally* Am. Compl. On April 5, 2022, Plaintiff had been assigned to general population housing unit 52. *Id.*, ¶ 9. As discussed in the Govt. Mem., prior to the May 10, 2022 incident, Plaintiff was primarily housed in general population housing unit 53—not unit 52 like he implies—while in custody at the MDC. *See* Santucci Decl. ¶ 7; Exhibit A to Santucci Decl.
[7] To the extent Plaintiff argues that MDC staff, including Lieutenant Santucci, abused their discretion, such claim also is barred by the DFE. *See In re Agent Orange Product Liab. Litig.*, 818 F.2d 210, 215 (2d Cir. 1987).

4

First, on its face, Section 7 of Prgm. Stmt. 7331.05 does not apply to housing decisions made after an initial assessment of a pre-trial inmate. *See* Prgm. Stmt. 7331.05(7). At the time of the incident on May 10, 2022, Plaintiff had been housed at MDC for six months. *See* Santucci Decl. ¶4. Thus, the section is inapplicable and Plaintiff does not attempt to explain otherwise. *See generally* Plt. Oppo. Second, there is no other basis for arguing that Section 7 should be applied here. Prgm. Stmt. 7331.05 is not silent on how housing decisions must be made after that initial 48 hour period; Section 8, titled "Housing," *only* requires from "BOP employees" (i) that pretrial inmates be separated to the extent possible from convicted inmates and (ii) that "[p]rior to any housing change, employees must review the Bureau's Inmate Information System for information regarding possible separatees and other management concerns…." Prgm. Stmt. 7331.05(8).

Third, even if Section 7 did apply to Plaintiff on May 10, 2022 (which the government disputes), the plain language of Section 7 does not compel that "Unit Managers" make these decisions; instead, Section 7 states:

> *Normally*, the decision of a housing assignment for a pretrial inmate is not delegated *below* the Unit Manager level. *Alternate procedures may be implemented* based on institution needs only with specific written guidelines approved by the Warden.

Prgm. Stmt. 7331.05(7) (emphasis added). This language—upon which Plaintiff relies—does not limit these decisions to Unit Managers. BOP employees above that level, as well as below that level "based on institution needs," can make housing decisions.

Ignoring the applicable regulations of Prgm. Stmt. 7331.05(8), Plaintiff tries to obfuscate matters by discussing Section 7 and other inapplicable BOP procedures. He discusses the Unit Team and their role in Program Reviews. Plt. Oppo. 7-8. Program Reviews, which are governed by Section 11 of Prgm. Stmt. 7331.05, are regularly scheduled reviews of pretrial inmates. They have nothing to do with housing assignments after an inmate is released from the SHU. Plt. Oppo.

5

8. Plaintiff also discusses *custody* assignments, which Plaintiff suggests are the same as housing assignments. Plt. Oppo. 8. They are not. Form BP-338 and Prgm. Stmt. 5100.08 (Inmate Security Designation and Custody Classification),[8] cited by Plaintiff, apply to convicted inmates and relate to how BOP assesses a convicted inmate's security risk and other factors (referred to as "program needs") to come up that inmate's custody level. *See* Policy Stmt. 5100.08. At all times relevant to this action, Plaintiff was a pretrial inmate and Form BP-338 and Prgm. Stmt. 5100.08 do not apply.

In sum, at the time relevant to this case, under any reasonable reading of Prgm. Stmt. 7331.05, "BOP employees," not Unit Managers make housing decisions. Plaintiff's failure to identify any statute, regulations, policy, or directive that compelled otherwise on May 10, 2022 is fatal to his argument that the DFE does not apply. His claim must be dismissed.

## II.   The Lawsuit is Time-Barred

Even if the DFE does not apply and this Court has subject matter jurisdiction over Plaintiff's claim, the claim still should be dismissed because it is time-barred. The statute of limitations ("SOL") under the FTCA begins to run *when the agency mails the denial notice*, not when, or even if, the notice is received by claimant. *See* 28 U.S.C. §§ 2675(a); 2401(b) (lawsuit must be commenced "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim . . . ."). "[W]hether Plaintiff actually received the denial letter is irrelevant to determining whether her claim satisfies the [SOL]." *Mortillaro v. United States*, No. 21-cv-852, 2024 WL 328837, *4 (E.D.N.Y. Jan. 29, 2024) (DeArcy Hall, J); *see also Hunter v. United States Postal Service*, No. 19-cv-2572, 2020 WL 804946, *2 (E.D.N.Y. Feb. 18, 2020) (Cogan, J.); *Pascarella v. United States*, 582 F. Supp. 790, 792 (D. Conn. 1984).

---

[8] Form BP-338 is available https://www.bop.gov/policy/forms/BP_A0338.pdf and Prgm. Stmt, 5100.08 is available at https://www.bop.gov/policy/progstat/5100_008_cn-2.pdf (last accessed Sept. 24, 2025).

6

At the latest, the SOL for Plaintiff to bring suit began running by June 16, 2023, the date the denial notice was processed at the Postal Service ("USPS") mail facility. The Second Circuit, in *Davis v. Goldstein*, 563 F. App'x 800, 803 (2d Cir. 2014), confirmed its prior ruling in *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92 (2d Cir. 2010), that a "presumption of receipt" applies where "the record establishes office procedures, followed in the regular course of business, pursuant to which notices have been addressed and mailed." *Davis*, 563 F. App'x at 803. In *Ma,* the Second Circuit held that the "[m]ere denial of receipt [was] insufficient" to overcome the presumption of receipt. *Id.* Rather, a plaintiff had to show that "routine office practice was not followed or was so careless that it would be unreasonable to assume that notice was mailed." *Id.* (internal quotation marks omitted).

Here, it is undisputed that Plaintiff filed the SF-95 with BOP on or about July 28, 2022. *See* Am. Compl. ¶ 4. It also is undisputed that on June 13, 2023, Plaintiff was housed in FCI Otisville, and that he left FCI Otisville on June 21, 2023. *Id*. at ¶ 6. Unlike in *Ma* and *Davis*, however, the record here reflects that BOP mailed the denial of Plaintiff's SF-95 on June 13, 2023 by certified mail to FCI Otisville where Plaintiff was housed. *See* Megaris Decl., ¶ 2. The USPS tracking statement for the mail piece shows that it was processed on June 16, 2023 at 11:00 p.m. in Philadelphia, Pennsylvania. *Id*., ¶ 3. Relying on an out-of-circuit 2005 case from the District of Puerto Rico, Plaintiff argues that BOP should have checked to see if the denial letter arrived when it did not receive the return receipt. Plt. Oppo. 10. *Matos v. United States*, 380 F. Supp. 2d 36, 39 (D.P.R. 2005). But the FTCA, on its face, does not impose such a high burden on the government and reading such a requirement into the statute would negate the plain language of 28 U.S.C. §§ 2675(a) and 2401(b), which limit the government's burden to *mailing* the notice. Moreover, such a holding is inconsistent with *Ma* and *Davis,* which concluded that, to rebut the presumption

7

of receipt, plaintiff must show that "routine office practice was not followed or was so careless that it would be unreasonable to assume that notice was mailed." *Ma*, 597 F.3d at 92. Plaintiff cannot meet this high standard. Because Plaintiff was in BOP's custody on June 13, 2025 when it denied the SF-95, BOP knew, with 100% certainty, where Plaintiff was residing at the time it mailed the notice. As such, BOP acted reasonably and in good faith when it addressed the notice to FCI Otisville. Plaintiff cannot show that "routine office practice was not followed or was so careless that it would be unreasonable to assume that notice was mailed" and the argument fails.

Nor is Plaintiff entitled to equitable tolling to save his untimely complaint. The doctrine of equitable tolling requires a high showing from a plaintiff: (1) that some extraordinary circumstances stood in his way and (2) that he has been pursuing his rights diligently. *See A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011); *see also Triplett v. Reardon*, No. 21-cv-1058, 2024 WL 2891685 (E.D.N.Y. June 10, 2024) (Kovner, J.); *Hunter*, 2020 WL 804946, at *2 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). "Equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstance[s].'" *A.Q.C.*, 656 F.3d at 144 (citing *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000); Plaintiff here has not pled, nor can he, the presence of extraordinary circumstances or sufficient diligence.

According to Plaintiff, a "trio of facts" make his circumstances extraordinary: BOP mailed the notice to FCI Otisville (where Plaintiff was living) instead of to the address listed on his SF-95; the notice was mailed a few days before he was released; and the notice "likely" got lost in the mail. Plt. Oppo. 15. He also noted that he initially was proceeding *pro se*. *Id.* However, these allegations do not rise to a finding of extraordinary. *See, e.g., Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017) (rejecting Watson's claims that his circumstances—he was incarcerated

8

at the time, suffered from depression, lacked education, originally proceeded *pro se*, and ignorant of his right to bring a FTCA claim—were extraordinary).

*Doe v. United States*, 76 F.4th 64 (2d Cir. 2023)—the case cited by Plaintiff in support of a finding of "extraordinary circumstances" here—is not to the contrary. In that case, Doe, a native of Honduras, was told by an officer of U.S. Immigration and Customs Enforcement ("ICE") that she was subject to deportation and could be arrested. *Id*. at **67-68. Following that encounter, the ICE officer sexually abused Doe—including violently raping her on a regular basis for seven years—and threatened her with deportation and murder. *Id*. The rapes resulted in multiple pregnancies and Doe attempted suicide on three occasions. *Id*. When the ICE officer left ICE, he threatened Doe. *Id*. at *69.  Doe filed her lawsuit four years later. *Id*. Recognizing that a prisoner may show extraordinary circumstances for purposes of equitable tolling where they allege specific facts showing that a reasonable fear of retaliation by their jailers prevented them from filing a timely complaint, the Second Circuit concluded that a trier of fact could conclude that Doe's circumstances were extraordinary. *Id*. There is no rational universe where what Plaintiff is alleging compares to the circumstances the Second Circuit considered in *Doe*. *Id*. at *72.

Plaintiff relies on *Matthews v. Gilley*, No. 6:24-cv-62, 2025 WL 2345816, from the Eastern District of Kentucky, as "directly on point." Plt. Oppo. There, the district court found that it needed more information to make a determination on equitable tolling because, under Sixth Circuit law, the court had to consider the plaintiff's lack of notice of the filing requirement; the plaintiff's lack of constructive knowledge of the requirement; the plaintiff's diligence in pursuing his rights; an absence of prejudice to the defendant; and the plaintiff's reasonableness in remaining ignorant of the requirement. *Matthews*, 2025 WL 234816, at *2. The Second Circuit has not adopted the Sixth Circuit's factor test and therefore *Matthews* has no application here.

9

Even if the Court were to find Plaintiff's situation to be extraordinary, Plaintiff did not diligently pursue his claim after filing the first SF-95. In *Hunter v. United States*, *pro se* plaintiff Hunter filed an administrative claim with the USPS under the FTCA. 2020 WL 804946, at *2. The USPS sent a letter by certified mail on June 15, 2018 denying the claim. *Id*. The *USPS's tracking system suggested that the letter was not delivered to Hunter* and Hunter denied receiving it. *Id*. Judge Cogan declined to equitably toll the SOL. *Id*. Although the court found Hunter was diligent in filing her claim and that she actively provided the USPS documents and engaged in settlement negotiations, Hunter went radio-silent for one year after demanding a new offer. *Id*.

*Burke v. United States Postal Service* also is illustrative. No. 19-cv-2539, 2020 WL 9816003, *1 (E.D.N.Y. Sept. 28, 2020) (Brodie, J.). There, a USPS vehicle struck Burke's vehicle, causing injures. Burke timely filed a claim with the USPS. The USPS denied her claim via certified mail to Burke's counsel but Burke did not file suit until one year later. *Id*. at *5. Burke argued she was entitled to equitable tolling of the SOL because her counsel's office never received the denial notice and she diligently pursued her rights by filing the claim within two years of its accrual. *Id*. at *6. Judge Brodie disagreed, finding that equitable tolling was not appropriate because, while Burke was diligent in presenting her claim to the USPS, she "has not shown that she acted with reasonable diligence throughout the period she seeks to toll." *Id*.. Here, the BOP denied Plaintiff's claim on June 13, 2023.

Like Hunter and Burke, Plaintiff was diligent in filing his claim with BOP, but he did not follow up. Plaintiff does not describe any steps he took during the approximately 11 months between June 13, 2023 and May 6, 2024 when he filed his second SF-95. *See* Am. Compl. ¶¶ 7, 8. Because Plaintiff cannot meet the standard for equitable tolling, the Court should dismiss this action as time-barred.

10

## CONCLUSION

For the foregoing reasons and those set forth in the Govt. Mem., Defendant respectfully requests that this Court grant Defendant's motion to dismiss Plaintiff's action in its entirety, and grant Defendant any such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
September 24, 2025

                                        JOSEPH NOCELLA, JR.
                                        United States Attorney

By:    /s/ Alexandra Megaris
         Alexandra Megaris
         Assistant United States Attorney
         Eastern District of New York
         Attorney for Plaintiff
         271-A Cadman Plaza East
         Brooklyn, New York 11201
         (718) 254-6105
         alexandra.megaris@usdoj.gov

TO:    Robert H. Rickner
        Rickner PLLC
        14 Wall Street, Suite 1603
        New York, New York 10005
        rob@ricknerpllc.com

        Elana L. Cohen
        J. Remy Green
        Jessica Massimi
        Cohen & Green P.L.L.C.
        1639 Centre Street, Suite 216
        Ridgewood, New York 11385
        elena@femmelaw.com
        remy@femmelaw.com
        jessica@femmelaw.com

**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1(C)**

I, Alexandra Megaris, certify that Defendant's Reply Memorandum of Law in Further Support of its Motion to Dismiss, dated September 24, 2025 complies with the requirements of Local Rule 7.1(c), in that it contains 4,378 words.

Dated: September 24, 2025
      Brooklyn, New York

                                            */s/ Alexandra Megaris*
                                            Assistant U.S. Attorney