UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x

ANTONIO EADDY,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

---------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-8109 (RPK) (VMS)

RACHEL P. KOVNER, United States District Judge:

Antonio Eaddy, a former pretrial detainee at the Metropolitan Detention Center ("MDC"), brings this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* He alleges that a prison lieutenant acted negligently in moving him to a housing unit where he was subsequently attacked by other inmates. Plaintiff's claim is barred by the discretionary-function exception to the FTCA's waiver of sovereign immunity. Accordingly, the government's motion to dismiss for lack of subject matter jurisdiction is granted.

## BACKGROUND

The following facts are drawn from the operative complaint and are assumed true for the purposes of this order.

In 2022, plaintiff was held as a pretrial detainee at the MDC in Brooklyn, New York. Am. Compl. ¶ 13 (Dkt. #16). He was initially held in housing unit 52 and then moved to the Special Housing Unit ("SHU"). *Ibid.* After about two weeks in the SHU, a Bureau of Prisons ("BOP") employee plaintiff identifies as "Lieutenant Santucci" told plaintiff that he was being moved to housing unit 51. *Id.* ¶ 17. Plaintiff expressed safety concerns to Lieutenant Santucci, because unit

51 "was known at the time to be a unit where gang members were housed" and as "extremely dangerous." *Id.* ¶ 18. Lieutenant Santucci told plaintiff that his only other option was to stay in the SHU. *Id.* ¶ 19. Plaintiff chose reassignment, *ibid*., and he was placed in a cell in housing unit 51 with an unfamiliar cellmate, *id.* ¶ 21. Later that day, plaintiff's cellmate and several other residents of unit 51 attacked him, causing serious injuries. *Id.* ¶¶ 23, 35, 28, 30, 32-33.

Plaintiff filed an administrative claim *pro se* seeking damages for this injury in 2022. The BOP denied the claim, but plaintiff alleges he never received the denial. *Id.* ¶¶ 5, 7. He served his claim again—this time assisted by counsel—in 2024. *Id.* ¶ 8. The BOP issued a second denial, and plaintiff then filed this lawsuit. *See* Compl. (Dkt. #1). In his amended complaint, plaintiff asserts that Lieutenant Santucci improperly moved him into a new housing unit, leading to his injuries. He argues that the claim is not barred by sovereign immunity because Lieutenant Santucci's actions violated mandatory BOP policies. Am. Compl. ¶¶ 46, 50–51, 53.

The government moved to dismiss the amended complaint based on sovereign immunity, disputing plaintiff's claim that Lieutenant Santucci violated any mandatory BOP policy. Def.'s Mot. to Dismiss (Dkt. #26); Def.'s Mem. in Supp. 8 (Dkt. #26-1). In the alternative, the government argues that plaintiff's claim is time-barred. Def's Mem. in Supp. 15.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it," *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), including, as relevant here, when a plaintiff brings a claim against the United States that is barred by sovereign immunity, *see Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021).

In assessing whether a claim should be dismissed for lack of subject-matter jurisdiction, a court "must take all uncontroverted facts in the complaint . . . as true[ ] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "But 'where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Ibid.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (brackets omitted)).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. As a result, "[b]ecause plaintiff[] bear[s] the initial burden of showing that [his] claims against the United States fall within the FTCA's limited waiver of sovereign immunity, plaintiff[] also bear[s] the initial burden of showing that [his] claims are not barred by the discretionary function exception." *Cangemi*, 13 F.4th at 130.

**DISCUSSION**

The government's motion to dismiss for lack of subject-matter jurisdiction is granted. "Absent an 'unequivocally expressed' statutory waiver, the United States . . . [is] immune from suit based on the principle of sovereign immunity." *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (citing *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–61 (1999)). The FTCA waives immunity for some lawsuits seeking damages for negligence by a federal employee, 28 U.S.C. § 1346(b)(1), but not for "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a). A plaintiff "can overcome a motion to dismiss premised on" this discretionary-function exception "by showing that *either* (1) the United

States' allegedly tortious act (or failure to act) was inconsistent with a 'specific mandatory directive'—*i.e.*, a 'federal statute, regulation, or policy that specifically prescribes a course of action for the federal government to follow,' . . . *or* (2) the allegedly tortious 'judgment or choice in question' is not 'grounded in considerations of public policy or susceptible to policy analysis.'" *Cangemi*, 13 F.4th at 130 (citing first *Berkovitz v. United States*, 486 U.S. 531, 536, 544 (1988) and then *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000)). As explained below plaintiff has not met his initial burden of setting forth facts that would show his claims fall outside the discretionary-function exception.

**A. Mandatory Directive**

Plaintiff stakes his lawsuit on the first escape hatch from the discretionary-function exception—a mandatory directive. But plaintiff has not met his initial burden of putting forward a basis to conclude that Lieutenant Santucci violated any such rule.

In general, BOP decisions regarding prisoner housing are discretionary. By statute, the BOP must "provide suitable quarters" for, "provide for the safekeeping" of, and "provide for the protection" of all federal inmates. 18 U.S.C. § 4042(a)(2)–(3). But while "[t]his provision 'sets forth a mandatory duty of care[,] it does not . . . direct the manner by which the BOP must fulfill this duty." *Chen v. United States*, No. 09-CV-2306 (ARR), 2011 WL 2039433, at *7 (E.D.N.Y. May 24, 2011) (quoting *Taveras v. Hasty*, No. 02-CV-1307 (DGT), 2005 WL 1594330, at *3 (E.D.N.Y. July 7, 2005)), *aff'd*, 494 F. App'x 108 (2d Cir. 2012). Accordingly, courts routinely hold that inmate housing decisions are discretionary. *See Young v. United States*, No. 12-CV-2342 (ARR) (SG), 2014 WL 1153911, at *11 n.5 (E.D.N.Y. Mar. 20, 2014) ("Housing assignments are left to the discretion of prison administrators."); *Nabe v. United States*, No. 10-CV-3232 (NGG) (VPP), 2014 WL 4678249, at *5 (E.D.N.Y. Sept. 19, 2014) (holding that housing-transfer-request

decisions are "discretionary internal-safety decisions" that are "traditionally left up to corrections officers within the prisons"); *Iotova v. Quay*, No. 19-CV-1957 (DG) (MMH), 2024 WL 923931, at *8 (E.D.N.Y. Mar. 4, 2024) (collecting cases), *report and recommendation adopted*, No. 19-CV-01957, 2024 WL 1513642 (E.D.N.Y. Apr. 8, 2024); *see also Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (collecting cases from different circuits). "[I]nmates' injuries arising from such decisions do not defeat application of the discretionary function exception." *Powell v. United States*, No. 18-CV-5378 (ERK) (MMH), 2024 WL 4329842, at *5 (E.D.N.Y. Aug. 20, 2024).

Plaintiff argues that Lieutenant Santucci nevertheless violated a mandatory directive in his case by making a housing assignment at all—pointing to a BOP "Program Statement" that he reads to say that only "unit managers" may make housing assignments. *See* 28 C.F.R. § 551.100; BOP Program Statement 7331.05, Pretrial Inmates, https://www.bop.gov/policy/progstat/7331_005_cn-1.pdf. The version of the Program Statement that plaintiff relies on in his brief and complaint cannot have established such a duty because it did not exist in 2022—it is dated August 1, 2023—but the Court takes judicial notice of the similar policy in effect in 2022, which differs in only minor respects, *see* Fed. Bureau of Prisons, U.S. Dep't of Justice, BOP Program Statement 7331.04, Pretrial Inmates (Jan. 31, 2003), https://www.bop.gov/policy/progstat/7331_004.pdf (archived at https://web.archive.org/web/20220630051518/https://www.bop.gov/policy/progstat/7331_004.pdf). In both versions, the relevant program statement provides that "[n]ormally, the decision of a housing assignment for a pretrial inmate is not delegated below the unit manager level," although "[a]lternate procedures may be implemented based on institution needs only with specific written

guidelines the Warden approved." Program Statement 7331.04(10)(b); *accord* Program Statement 7331.05(7)(b).

This statement does not establish the mandatory directive that plaintiff needs to avoid sovereign immunity, because it applies to placements upon *intake*. The language appears in a section entitled "INTAKE SCREENING AND ASSESSMENT OF PRETRIAL INMATES." Program Statement 7331.04(10). The section is described as containing procedures "to augment those in the Program Statement on *Intake Screening*." *Ibid.* (emphasis added). And its substance reinforces that it sets out rules for intake, by listing steps to be performed when an inmate arrives at a facility, culminating in the unit manager assignment decision. Specifically, the section provides for "an initial risk/needs assessment" within 48 hours of admission, *ibid.*, performed by specified staff members, Program Statement 7331.04(10)(a), who must interview the inmate, Program Statement 7331.04(10), seek certain information from enumerated sources, Program Statement 7331.04(10)(b)(1)-(2), and then "make a recommendation for housing to the unit manager," Program Statement 7331.04(10)(b), with the sentence on which petitioner relies appearing immediately after that, *ibid.* The provision thus sets out a procedure for "intake screening and assessment of pretrial inmates," Program Statement 7331.04(10) (capitalization altered) "[w]ithin the first 48 hours of admission," leading to a staff "recommendation," and then a unit manager "decision." Program Statement 7331.04(10); *see* Program Statement 7331.05(7). Plaintiff cannot rely on these procedures because his lawsuit does not involve his unit assignment upon intake, but rather a reassignment after a stay in another MDC housing unit and the SHU. Accordingly, this provision does not set forth a mandatory directive that Lieutenant Santucci violated.

Plaintiff points to a further paragraph in the program statement—titled PRETRIAL INMATE REVIEWS—which lies outside the section on intake screenings. But that section does not set forth any mandatory duty implicated in this case. In 2022, that section provided for "regular reviews of a pretrial inmate's status," Program Statement 7331.04(14) (2003), during which "the Unit Manager is responsible for ensuring the scheduling of pretrial inmate reviews and for determining whether the inmate has been found guilty by the court of the offense since the last review." 7331.04(14) (2003). It does not mention housing assignments, let alone require that every housing decision be made by the unit manager. Even the 2023 Program Statement, which addresses housing assignments, merely makes the unit manager "responsible for reviewing work, programming, and housing unit assignments *for transgender and intersex inmates*, per Prison Rape Elimination Act (PREA) guidelines." Program Statement 7331.05(11) (2023) (emphasis added); *see* Compl. ¶ 50. Plaintiff has not alleged he identifies as transgender or as an intersex inmate, so this provision does not apply to his circumstances. Further, this provision merely assigns a duty to review housing assignments to the unit manager; it does not limit the ability to assign housing to the Unit Manager.

In a final bid to establish a mandatory duty that Lieutenant Santucci violated, plaintiff's complaint posits that "upon information and belief," Am. Compl. ¶ 53, Lieutenant Santucci violated the requirement that "[p]rior to any housing change, staff must review [a BOP database] for possible separatees and other management concerns and document this review in the inmate's," files, Program Statement 7331.04(11)(c); *see* Am. Compl. ¶ 53. Pleading on "information and belief" is permitted only when (1) "the facts are peculiarly within the possession and control of the defendant or" (2) "where the belief is based on factual information that makes the inference of culpability plausible." *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018)

(internal quotation marks omitted) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). Even then, statements made upon information and belief must be supported by some factual allegations making them plausible. *See, e.g., Sula v. Miranda,* 830 F. App'x 341, 345-346 (2d Cir. 2020) (rejecting plaintiff's allegations "upon information and belief" regarding an employee's role in a termination decision because plaintiff set out "no factual basis to support it"); *Yamashita v. Scholastic, Inc.*, 936 F.3d 98, 105, 107 (2d Cir. 2019) (rejecting plaintiff's allegation "upon information and belief" that defendant exceeded its license to use certain photos because the complaint lacked more specific factual allegations making that claim plausible). Plaintiff has not pleaded such supporting facts here, and defendant has submitted an affidavit and records evidencing that MDC staff did in fact review the relevant inmate database before plaintiff was reassigned to housing unit 51. Santucci Decl. ¶ 12 (Dkt. #26-2); Santucci Decl. Ex. C. (Dkt. #26-2, at ECF pp. 7–11); *see Tandon*, 752 F.3d at 243 (permitting and requiring the court to decide issues of jurisdictional fact by "reference to evidence outside the pleadings, such as affidavits") (citation omitted). Under these circumstances, plaintiff's information-and-belief allegation regarding a database search is insufficient to withstand the motion to dismiss.

In sum, plaintiff has not met his initial burden of showing that Lieutenant Santucci violated a mandatory directive when he assigned plaintiff to housing unit 51. The program statements that plaintiff cites do not require that every housing assignment decision be made by a unit manager, and plaintiff has not made any preliminary showing that Lieutenant Santucci violated any other rule.

**B. "Grounded in Public Policy"**

There is no dispute that Lieutenant Santucci's decision regarding housing placement was grounded in public policy—making the second carveout from the discretionary-function exception

unavailable to plaintiff. *See Gaubert*, 499 U.S. at 324–25. Courts in this Circuit routinely hold that housing decisions are grounded in policy considerations, because they "implicate considerations of 'inmate safety, general prison security, . . . and the effective use of limited resources.'" *Powell*, 2024 WL 4329842, at *5 (collecting cases); *accord Young*, 2014 WL 1153911, at *11 n.5 (citing cases); *Iotova*, 2024 WL 923931 at *8; *Nabe*, 2014 WL 4678249, at *6. And plaintiff has made no argument for a contrary rule. Accordingly, he has not met his initial burden of showing that Lieutenant Santucci's housing decision falls outside the discretionary-function exception on the theory that it was not grounded in public policy.

* * *

For the foregoing reasons, plaintiff's claim is dismissed as barred by the FTCA's discretionary-function exception.

**CONCLUSION**

Defendant's motion to dismiss is granted. The case is dismissed without prejudice for lack of subject matter jurisdiction. The Clerk of Court is respectfully directed to enter judgment, and to close the case.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: September 10, 2026
Brooklyn, New York